## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

UTAH LIGHTHOUSE MINISTRY,
INC., a Utah corporation,

        **Plaintiff,**

vs.

DISCOVERY COMPUTING, INC., an
Arizona Corporation and ALLEN L.
WYATT, an individual, DEBRA M.
WYATT, an individual, THE
FOUNDATION FOR APOLOGETIC
INFORMATION & RESEARCH (FAIR),
a New York Corporation, and SCOTT
GORDON, an individual,

        **Defendants.**

**MEMORANDUM DECISION AND
ORDER**

Case No. 2:05CV380DAK

This matter is before the court on Defendants Foundation for Apologetic Information and
Research ("FAIR") and Scott Gordon's ("Mr. Gordon") (collectively "the FAIR Defendants")
Motion to Dismiss Plaintiff Utah Lighthouse Ministry, Inc.'s ("UTLM") Complaint against them
for failing to state a claim upon which relief may be granted.[1]  Defendants Discovery Computing,
Inc. ("Discovery"), Allen L. Wyatt ("Mr. Wyatt"), and Debra M. Wyatt ("Ms. Wyatt")

---

[1] The FAIR Defendants also state that they have brought their motion pursuant to Federal
Rule of Civil Procedure 56 and included affidavits along with their motion.

(collectively "the Discovery Defendants") also move this court to dismiss UTLM's Complaint against them on the alternative grounds of (1) lack of personal jurisdiction, (2) improper venue, (3) lack of subject matter jurisdiction, (4) mootness, and (5) the doctrine of unclean hands.  The FAIR Defendants join in the Discovery Defendants' Motion to Dismiss on the grounds of lack of subject matter jurisdiction, mootness, and the doctrine of unclean hands.  A hearing on the motions was held on November 16, 2005.  At the hearing UTLM was represented by Paul C. Oestreich, the FAIR Defendants were represented by Ronald L. Dunn, and the Discovery Defendants were represented by Lance C. Starr.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motion under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court enters the following Memorandum Decision and Order.

## I.  BACKGROUND[2]

Jerald and Sandra Tanner ("Mr. Tanner" or "Ms. Tanner" or collectively "the Tanners") established UTLM as a Utah non-profit organization in 1982.  UTLM provides information regarding Christianity and, in particular, critical analyses of the history and doctrines of the Church of Jesus Christ of Latter-day Saints ("LDS Church").  This information is provided through books, online books, articles, newsletters, and an Internet website.  The Tanners have co-authored at least 45 books on the subject of the LDS Church and are well known for their extensive research into LDS Church history and doctrine among adherents of their beliefs and consumers of their books, as well as by their detractors.

---

[2]The court treats the allegations in UTLM's Complaint as true for purposes of these motions.

UTLM has been using the mark Utah Lighthouse, along with the names of its founders–Sandra Tanner and Jerald Tanner–in commerce since at least September 1982.  On September 17, 1997, UTLM registered the domain name www.utlm.org and launched a website ("UTLM website").  The UTLM website provides access to UTLM's newsletter, Salt Lake City Messenger; other online resources; online books; a booklist; information about ordering books online; and contact information for UTLM.  UTLM's revenue comes from charitable donations, and from the sale of books through the UTLM website and its physical bookstore located in Salt Lake City.

Discovery is an Arizona corporation offering services in computer authoring, publishing, consulting, and Internet advertising.  Discovery also provides website registration services for its customers.  Mr. Wyatt is the President, CEO, and a Director of Discovery, and Ms. Wyatt is the Secretary and also a Director of Discovery.

One of Discovery's customers is FAIR.  FAIR is a New York non-profit organization that operates, and is the registrant of, two websites–www.fairlds.org and www.blacklds.org.  The FAIR website, www.fairlds.org ("the FAIR website"), states that FAIR is an "organization dedicated to providing well-documented answers to criticisms of LDS (Mormon) doctrine, belief and practice."  The FAIR website offers its visitors access to FAIR publications, message boards, and an online bookstore that sells LDS books.  Mr. Wyatt is the editor and webmaster for the FAIR website.  Both Mr. Wyatt and Mr. Gordon are members of FAIR's Board of Directors, and Mr. Gordon is the President of FAIR.

On August 15, 2002, Mr. Wyatt sent Ms. Tanner a letter indicating that he was in need of information for a book he was writing.  Mr. Wyatt requested copies of (1) Ms. Tanner's original

3

handwritten notes regarding her pre-1970 LDS research, (2) her personal journals, (3) Mr. Tanner's personal journals, (4) all of UTLM's publications between 1959 and 1999, and (5) any profit and loss statements or tax returns for UTLM through 1999.  Mr. Wyatt included a check for $40.00 to cover the cost of copying and postage.

On August 20, 2002, Ms. Tanner responded to Mr. Wyatt's request by providing copies of UTLM's 990 tax forms for the years 1983 to 1999 and a refund check for $20.00.  On August 26, 2002, Mr. Wyatt sent Ms. Tanner another letter requesting additional information along with the $20.00 refund check.  She responded to this second request on September 12, 2002, again including the $20.00 refund check and providing additional information regarding the origins of UTLM and royalties received for books.

Between November 19 and 20, 2003, Mr. Wyatt registered the following domain names: utahlighthouse.com, sandratanner.com, utahlighthouseministry.com, geraldtanner.com, geraldtanner.org, utahlighthouse.org, utahlighthouseministry.org, sandratanner.org, jeraldtanner.com, jeraldtanner.org, utahlighthouse.info, jeraldtanner.info, and sandratanner.info.[3] Also on those dates, Mr. Wyatt established a website ("the Wyatt website") for those domain names and/or redirected users to the Wyatt website.  The HTML source code for the Wyatt website includes the terms "Tanner," "Tanners," "Sandra Tanner," and "Jerald Tanner" in the meta tags section.  Meta tags allow Internet search engines to locate web pages relevant to the search terms entered by a user.

Neither the Discovery Defendants nor the FAIR Defendants have any intellectual property

---

[3]There is some question as to whether Mr. Wyatt requested registration of the domain names utahlighthouse.info, jeraldtanner.info, and sandratanner.info.  This question, however, has no bearing on the court's analysis.

rights in any of the domain names for the Wyatt website. The Wyatt website bears a remarkable resemblance to the UTLM website. While the text within the two websites is different, the aesthetic and functional layout is nearly identical. On the Wyatt website, there are further links on the page: one purports to be "Articles about the Tanners" and the other purports to be "Books by the Tanners." Users clicking on the "Articles" link are given a selection of hyperlinks to articles posted on the FAIR website. Users clicking on the "Books" link are provided a selection of hyperlinks to additional articles, one of which is posted on the FAIR website, and the other links are to the Foundation for Ancient Research and Mormon Studies ("FARMS"), a Brigham Young University group.

Additional links take visitors to the FAIR website homepage and the official LDS website, www.lds.org. Once on the FAIR website, visitors can link to the "FAIR LDS Bookstore" to purchase books competing for the same audience as those offered by UTLM: individuals seeking information about Mormonism. FAIR benefits from the increased sales of books generated by Internet traffic sent to the FAIR website by links on the Wyatt website.

From January 2004 to March 2005, UTLM received seven separate emails from customers informing UTLM of the Wyatt website. On March 21, 2005, UTLM filed an application with the United States Patent and Trademark Office to register the mark "Utah Lighthouse." On April 25, 2005, UTLM filed a Complaint against the FAIR Defendants and the Discovery Defendants for (1) trademark infringement, (2) unfair competition, (3) dilution, (4) cybersquatting, and (5) trade dress infringement.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

must determine whether the factual allegations in the complaint, if true, would entitle the plaintiff to a legal remedy.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is appropriate only when "the plaintiff can prove no set of facts in support of his claims to entitle him to relief." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999); *Seamons v. Snow,* 84 F.3d 1226, 1231 (10th Cir.1996).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991)).  The court must accept all well-pleaded facts as true, construe those facts liberally in a light most favorable to the plaintiff, and "resolve all reasonable inferences in plaintiff's favor." *Seamons*, 84 F.3d at 1232.  However, conclusory allegations without supporting factual averments need not be accepted. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 510 (10th Cir. 1998); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Additionally, the standard of review for a motion to dismiss for lack of personal jurisdiction is well established.  "When a court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Electronic Realty Assoc. v. Vaughan*, 897 F. Supp. 521, 521 (D. Kansas 1995) (citing *McNutt v. General Motors*, 298 U.S. 178, 189 (1936)).  However, in the preliminary stages of litigation, the plaintiff's burden is light.  *Vaughan,* 897 F. Supp. at 521.  "Where . . . there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id*.; *see also Soma Med. Int'l v. Standard*

6

*Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1995).  All factual disputes are resolved in favor

of the plaintiff when determining the sufficiency of this showing.  *Wenz v. Memory Crystal*, 55

F.3d 1503, 1505 (10th Cir. 1995).

### III.  DISCUSSION

#### A.  The FAIR Defendants' Rule 12(b)(6) Motion

The FAIR Defendants filed a motion to dismiss for failure to state a claim upon which

relief may be granted.  Along with their motion, they provided affidavits from Mr. Gordon and

Mr. Wyatt that both indicated that Mr. Wyatt acted alone without encouragement or direction

from FAIR or Mr. Gordon.  In response, UTLM merely reiterated the allegations in its Complaint

and did not provide responsive affidavits or other evidence to refute Mr. Gordon's or Mr.

Wyatt's affidavit.  Because UTLM failed to move for additional discovery time pursuant to

Federal Rule of Civil Procedure 56(f), the FAIR Defendants urge the court to accept the

affidavits, treat their motion as one for summary judgment, and grant their motion.  The court,

however, declines to do so.  While the FAIR Defendants are correct that UTLM did not file a

Rule 56(f) motion, UTLM did request time for discovery at the hearing.  Because Rule 12(b)(6)

provides that if a court decides to treat a motion to dismiss as a summary judgment motion, "all

parties shall be given reasonable opportunity to present all material made pertinent to such a

motion by Rule 56," the court chooses to disregard the affidavits and treat the FAIR Defendants'

motion as a motion to dismiss for failure to state a claim.

The Fair Defendants argue that UTLM has failed to allege any misconduct by FAIR or

Mr. Gordon beyond mere knowledge that Mr. Wyatt purchased the domain names and

established the Wyatt website.  The Fair Defendants also contend that even if UTLM could

establish some wrongdoing by FAIR, it could not reach Mr. Gordon without establishing some

independent action by him beyond mere knowledge.  UTLM responds that it has stated a claim as

it alleged that the FAIR Defendants, individually or collectively, directed or encouraged Mr.

Wyatt to establish the Wyatt website to draw Internet traffic away from the UTLM website to the

FAIR website and to generate revenues by the sale of books that compete with UTLM's books.

UTLM further asserts that it has alleged that the FAIR Defendants are liable for trademark

infringement under a theory of contributory infringement.  Specifically, UTLM alleged that once

the FAIR Defendants became aware of the Wyatt website, they encouraged Mr. Wyatt to

continue his infringing acts.  UTLM alternatively argues that the FAIR Defendants continued to

operate the FAIR website even after learning of Mr. Wyatt's infringing acts, thus causing sales of

books on the FAIR website to compete with UTLM's book sales.

      The court finds that this is sufficient to state a claim against the FAIR Defendants.  *See* 15

U.S.C. § 1114(1).  The United States Supreme Court has held that

> liability for trademark infringement can extend beyond those who actually
> mislabel goods with the mark of another.  Even if a manufacturer or distributor
> intentionally induces another to infringe a trademark, or if it continues to supply
> its product to one who it knows or has reason to know is engaging in trademark
> infringement, the manufacturer or distributor is contributorially responsible for
> any harm done as a result of the deceit.

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982).  Thus, because UTLM has

alleged that the FAIR Defendants induced Mr. Wyatt to create the Wyatt website or, in the

alternative, continued to operate the FAIR website after learning of Mr. Wyatt's creation of the

Wyatt website, UTLM has defeated the FAIR Defendants' Motion to Dismiss.

      The FAIR Defendants also argue that in order to reach Mr. Gordon, UTLM must have

alleged facts sufficient to pierce the corporate veil.  The court, however, disagrees.  UTLM named Mr. Gordon individually in its Complaint which is sufficient to state a claim against him without piercing the corporate veil.  Accordingly, the FAIR Defendants' Motion to Dismiss is denied.

### B.  The Discovery Defendants' Motion to Dismiss

The Discovery Defendants have moved to dismiss UTLM's Complaint on the alternative grounds of (1) lack of personal jurisdiction, (2) improper venue, (3) lack of subject matter jurisdiction, (4) mootness, and (5) the doctrine of unclean hands.  The FAIR Defendants join in the Discovery Defendants' Motion to Dismiss on the grounds of lack of subject matter jurisdiction, mootness, and the doctrine of unclean hands.

### 1.  Personal Jurisdiction

#### (a)  Mr. Wyatt and Discovery

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  Because the Lanham Act does not provide for national service of process, Utah's long-arm statute governs this inquiry. *See generally*, 15 U.S.C. §§ 1051, et seq.; Fed. R. Civ. P. 4(k)(1)(A).

Utah's long-arm statute provides:

Any person . . . who in person or through an agent does any of the following enumerated acts, submits himself . . .  to the jurisdiction of the courts of this state as to any claim arising out of or related to:
(1) the transaction of any business within this state;
(2) contracting to supply services or goods in this state;
(3) the causing of any injury within this state whether tortious or by breach of warranty;

(4) the ownership, use, or possession of any real estate situated in this state . . . .

Utah Code Ann. § 78-27-24.  This statute is interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."  *Id.* § 78-27-22; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999).  The Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute."  *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).   Therefore, this court will first determine whether the exercise of personal jurisdiction over Mr. Wyatt and Discovery meets federal due process standards.

A "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)  (quoting *International Shoe v. Washington*, 326 U.S. 310, 316 (1945)).  The "minimum contacts" necessary for specific personal jurisdiction are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.'"  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  If the defendant's activities create sufficient minimum contacts, courts then consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

The Discovery Defendants assert that they do not have the requisite minimum contacts

with Utah because they (1) have not purposefully availed themselves to Utah and (2) could not reasonably foresee being haled into court in Utah.  Courts addressing personal jurisdiction within the context of Internet activity apply the sliding scale of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  The *Zippo* scale ranges from websites that are highly interactive, where a defendant clearly does business over the Internet and thus personal jurisdiction exists, to passive websites that merely provide information with no interaction and thus no personal jurisdiction exists.  *Id.* at 1124.  In the middle of the scale are interactive websites, where a user can exchange information with the host computer.  *Id.*  UTLM argues that the facts of the instant case fall within this middle ground because a Wyatt website user can exchange information with the host computer.  The Discovery Defendants counter that because a user cannot purchase anything directly from the Wyatt website and must click on a link to the FAIR website, the Wyatt website is merely passive.  The court, however, agrees with UTLM and finds that the Wyatt website falls within the middle ground of the *Zippo* scale.

Courts analyzing these middle ground cases generally look for "something more" than the mere existence of a website to find specific personal jurisdiction.  *System Designs, Inc. v. New Customware Co. Inc.*, 248 F. Supp. 2d 1093, 1100 (D. Utah 2003).  When making this personal jurisdiction inquiry, courts determine whether or not a defendant purposefully and substantially directed its actions regarding its website toward the forum state.  *Id.*  Here, there is no question that Mr. Wyatt registered the domain names under his name and the name of his company, Discovery, and that he set up the Wyatt website in order to criticize the Tanners and target UTLM and its customers residing in Utah.  Moreover, by using the meta tags  "Tanner," "Tanners," "Sandra Tanner," and "Jerald Tanner" in connection with the Wyatt website, Mr.

Wyatt and Discovery could have foreseen being haled into court in Utah.  Accordingly, the court

finds that engaging in this conduct purposefully availed them of the privilege of conducting

activities in Utah and that they could have foreseen being haled into a Utah court.

The Discovery Defendants also argue that the exercise of personal jurisdiction over them

would offend traditional notions of fair play and substantial justice in that (1) the burden on the

Discovery Defendants is too great, (2) Utah's interest is minimal because only one Utah statute

has been cited by UTLM, (3) UTLM can receive effective relief in another forum–namely

Arizona, (4) the most efficient resolution in this case would occur in Arizona, and (5) Arizona

has a substantive social policy interest in protecting the free speech of its citizens.  *See Burger*

*King*, 471 U.S. at 567-77.  UTLM counters that while there is some burden on the Discovery

Defendants defending in Utah, the other *Burger King* factors weigh in favor personal jurisdiction

in Utah.  Specifically, UTLM asserts that (1) there is no district in which all the Defendants may

be found or that is convenient for all of the Defendants because FAIR is a New York non-profit

corporation, Mr. Gordon resides in California, and the Discovery Defendants reside in Arizona;

(2) multiple lawsuits in three other jurisdictions would be a waste of judicial resources; (3) both

the Discovery Defendants and the FAIR Defendants have directed their actions against UTLM in

Utah; (4) a likelihood of confusion will probably occur in Utah; and (5) Utah is UTLM's choice

of forum.  *See id.*

The court agrees with UTLM and finds that exercising personal jurisdiction over Mr.

Wyatt and Discovery is reasonable and does not offend due process.  The inconvenience to Mr.

Wyatt and Discovery in requiring them to litigate in Utah is not so great as to deprive them of

due process.  *See System Designs, Inc.*, 248 F. Supp. 2d at 1104.  Accordingly, the court finds

that it has personal jurisdiction over Mr. Wyatt and Discovery.

**(b)  Ms. Wyatt**

While UTLM asserts that there is personal jurisdiction over Ms. Wyatt in Utah, the court finds that her contacts with Utah are insufficient to establish that she purposefully availed herself to Utah.  UTLM merely alleges that because Ms. Wyatt is a Director of Discovery, she must be aware of Mr. Wyatt and Discovery's infringing activities.  UTLM has not alleged that Ms. Wyatt directed or encouraged Mr. Wyatt or Discovery to register the domain names or launch the Wyatt website.  Accordingly, the court finds that it may not exercise personal jurisdiction over Ms. Wyatt, and thus the Complaint is dismissed as to her.

## 2.  Venue

The Discovery Defendants acknowledge that if the court has personal jurisdiction over them, then venue is also proper.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to UTLM's claims occurred in this district.  Courts have held that a substantial part of the events triggering trademark infringement occur in both the district where the infringer is located and in the district where the trademark owner is located and confusion is likely to occur.  *Sidco Industries, Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343 (D. Or. 1991) (dismissing the defendant's motion to dismiss for improper venue where the plaintiff alleged that confusion and diminution of its service mark occurred).  Accordingly, the court finds that venue is proper and the Discovery Defendants' Motion to Dismiss on the grounds of improper venue is denied.

## 3.  Subject Matter Jurisdiction

The Discovery Defendants move this court to dismiss UTLM's Complaint against them

13

for lack of subject matter jurisdiction to which the FAIR Defendants join.  They assert that in

order to survive a Rule 12(b)(1) motion to dismiss, a plaintiff must allege that (1) the trademark

violation was in connection with the sale of goods or services and (2) the defendant used the

trademark in commerce.  *See EuroMarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp. 2d

824, 830 (N.D. Ill. 2000).  They further contend that every cause of action asserted by UTLM

contains a "commercial use" requirement and that because the Wyatt website was merely a

parody of the UTLM website, UTLM has failed to meet the "commercial use" requirement.  The

court, however, finds that their subject matter jurisdiction argument is actually an argument for

failure to state a claim upon which relief may be granted.  Subject matter jurisdiction does exist

pursuant to the Trademark/Unfair Competition laws of the United States.  Dismissal would only

be proper if UTLM's claims "were so attenuated and unsubstantial as to be absolutely devoid of

merit or frivolous."  *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965

(10th Cir. 1996) (quotations and citations omitted).  The court finds that UTLM's claims are not

so attenuated or unsubstantial.  Moreover, the court finds that UTLM has pleaded facts sufficient

to meet the commercial use requirement for trademark infringement, and, accordingly, the

Discovery Defendants and the FAIR Defendants' Motion to Dismiss on the grounds of lack of

subject matter jurisdiction is denied.

### 4.  Mootness

The Discovery Defendants move this court to dismiss UTLM's Complaint on the grounds

that the case is now moot.  The FAIR Defendants also join this argument.  Specifically, they

contend that there is no case or controversy still existing because Mr. Wyatt ceased operation of

the Wyatt website on the day that UTLM's Complaint was filed.  They also assert that the case is

moot because on June 27, 2005, Mr. Wyatt transferred the domain names in question into an escrow account with the holder of the account given instructions to release the domain names only to UTLM.  The court, however, finds that the Discovery Defendants' act of placing the domain names in escrow for UTLM does not relieve them of liability for any damages that UTLM may have suffered from November 20, 2003 when the Wyatt website was launched to April 25, 2005 when Mr. Wyatt ceased operation of the Wyatt website.  While the court agrees that UTLM's damages may be minimal, the case is not moot.  Accordingly, the court denies the Discovery Defendants and the FAIR Defendants' Motion to Dismiss on the grounds of mootness.

### 5.  Unclean Hands

The Discovery Defendants assert that UTLM's Complaint should be dismissed under the doctrine of unclean hands.  The FAIR Defendants also join this argument.  Specifically, they maintain that UTLM's registration of the domain name www.bookofmormon.com and the redirecting of users to the UTLM website constitutes the same type of behavior UTLM seeks to enjoin.

The unclean hands doctrine requires that the inequitable conduct on the part of the plaintiff be related to the plaintiff's cause of action.  *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004).  Courts have held that the doctrine of unclean hands would prevent enforcement of a trademark only if a plaintiff's wrongdoing was related to the trademark that the plaintiff was attempting to enforce.  *See Japan Telecom, Inc. v. Japan Telecom America, Inc.*, 287 F.3d 866, 870 (9th Cir. 2002); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:51 (4th ed. 2002).  While it appears that Intellectual Reserve, Inc., the owner of the trademark

15

"Book of Mormon," may have a cause of action against UTLM, the Discovery Defendants and the FAIR Defendants do not because they do not have any intellectual property rights in either bookofmormon.com or "Book of Mormon."  Accordingly, the court denies their Motion to Dismiss on the grounds of unclean hands.

## IV.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the FAIR Defendants' Motion to Dismiss (Docket #9) is DENIED, the Discovery Defendants' Motion to Dismiss (Docket #12), joined in by the FAIR Defendants (Docket #13), is DENIED as to Defendants Allen L. Wyatt, Discovery Computing, FAIR, and Scott Gordon but GRANTED as to Defendant Debra M. Wyatt.  Accordingly, the Complaint is DISMISSED as to Defendant Debra M. Wyatt.

DATED this 1st day of December, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

16